# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 08-10844 |
| LORI ANN WALTERS | SECTION "B" |
| DEBTOR | CHAPTER 7 |

**************************************************************

| | |
|---|---|
| CAPITAL ONE BANK, N.A.<br>        PLAINTIFF | ADV.P.NO. 08-1077 |
| VERSUS | Consolidated for trial<br>with<br>08-01076 |
| LORI ANN WALTERS<br>        DEFENDANT | 08-01078<br>08-01079 |

## MEMORANDUM OPINION

This matter came before the court on December 7, 2009 as a trial on the complaint of Philip and Mary Ann Chisesi and Capital One Bank, N.A. ("Capital One") asking the court to hold that their claims against the debtor, Lori Ann Walters were nondischargeable under various subsections of 11 U.S.C. § 523. For the reasons set forth below, the court finds that the Chisesis' claims against Ms. Walters are excepted from discharge, but Capital One's contingent claims against Ms. Walters are dischargeable.

## I.    Background Facts

The debtor, Lori A. Walters, filed for bankruptcy relief on April 18, 2008.

On June 21, 2008, Capital One and Phillip and Mary Ann Chisesi initiated

adversary proceedings objecting to the dischargeability of the debts to these two

creditors.  On November 4, 2008, the two adversaries were consolidated for trial.

### A. The Chisesis' Claims

This adversary proceeding concerns the transfer of funds from Phillip and

Mary Ann Chisesi to L.A. Walters & Associates to obtain annuities from Allianz

Insurance ("Allianz"), United American Insurance Company ("United American"),

and National Western Life Insurance Co. ("National Western").  Following the

transfer of the Chisesis' funds the annuities were either not obtained or cancelled

without being remitted to the Chisesis.  The Chisesis filed a state court action on

January 22, 2008 in the 24th Judicial District Court for the Parish of Jefferson, State

of Louisiana, entitled "*Philip Chisesi and Mary Ann Chisesi versus William J.*

*Coury, Lori A. Walters, L.A. Walters & Associates, Allianz Life Insurance*

*Company, and National Western Life Insurance Company*," docket number 655-

277 (the "State Court Action").

The Chisesis began purchasing insurance products through Ms. Walters, Mr.

Coury, and L.A. Walters & Associates in 1999.[1]  Ms. Walters and Mr. Coury were

---

[1]  Trial Transcript p. 34.

authorized to sell insurance products on behalf of Allianz, United American, and

National Western.  Between 1999 and 2005, the Chisesis paid $1,114,495.54 to

L.A. Walters & Associates for various insurance products.[2]  They frequently dealt

with Mr. Coury on behalf of L.A. Walters & Associates.[3]  The Chisesis received

annual policy statements regarding their investments from Mr. Coury that were

ultimately discovered to be fabrications.[4] When the Chisesis attempted to

withdraw funds from their accounts, they were unable to do so. Ultimately, the

Chisesis learned from the insurance companies that the policies they thought they

had purchased were either cancelled or never existed in the first place.

Although Lori Ann Walters claimed she took no part in these transactions,

various documents and testimony showed she played a substantial part in L.A.

Walters & Associates.  Ms. Walters was, at the times relevant in this case, a

general agent of United American, and an authorized agent for Allianz and

National Western.[5]  Through her contracts with United American, Ms. Walters

registered William J. Coury as her subagent.[6]  Ms. Walters was also sole proprietor

of L.A. Walters & Associates.[7]  She registered and had access to the Capital One

---

[2]  Exhibits 2, 13, 19.
[3]  Trial Transcript p. 9.
[4]  Exhibit 18; Trial Transcript pp. 13-14.
[5]  Trial Transcript p. 71.
[6]  Trial Transcript p. 71.
[7]  Trial Transcript p. 81.

bank account in which the Chisesis' checks were deposited.[8]  Mr. Coury handled

all of the transactions, but used Ms. Walters' name, her bank account, and her tax

identification number.[9]  When the Chisesis contacted Ms. Walters about the

transactions, she would refer them to Mr. Coury.[10]  Ms. Walters provided Mr.

Coury with a signature stamp and she was aware that he would use it in connection

with the L.A. Walters & Associates bank account.[11]  Ultimately, Ms. Walters

received at least a substantial amount of the proceeds by transferring the funds into

her personal account and spending them.[12]

Ms. Walters, however, testified that Mr. Coury alone controlled L.A.

Walters & Associates and managed all of the transactions at issue. In addition to

their business relationship, Ms. Walters had been living with Mr. Coury from 1987

up until shortly before the time of her bankruptcy filing.[13]  Ms. Walters maintained

that the name of the sole proprietorship and the bank accounts were in her name

because of support problems and tax liens pending against Mr. Coury.[14]  Ms.

Walters stated that Mr. Coury managed all of the transactions and that she had no

---

[8]  Trial Transcript pp. 80, 99.  At the time of the transactions between the Chisesis
and L.A. Walters & Associates, the bank accounts were operated by Hibernia
National Bank, which has since been acquired by Capital One.
[9]  Trial Transcript p. 110.
[10]  Trial Transcript p. 9.
[11]  Trial Transcript p. 88.
[12]  Trial Transcript pp. 65-67, 84.
[13]  Trial Transcript pp.109, 114.
[14]  Trial Transcript p. 110.

4

reason to believe that he was conducting fraudulent transactions.  Ms. Walters admitted at trial that Mr. Coury committed fraud to obtain funds from the Chisesis, but maintained that she was unaware of this activity at the time.[15]  Mr. Coury was not available to testify at the time of trial.

### B.  Capital One's Claims

Capital One's claim against Ms. Walters is contingent upon the outcome of the State Court Action.  In particular, the Chisesis alleged in the State Court Action that United American was negligent in allowing Ms. Walters to open a bank account in the name "United American."  United American, in turn, filed a third party demand naming Capital One as a third party defendant.  United American's third party demand essentially asserted that if United American is liable to the Chisesis for Ms. Walters' misleading name for her bank account, then Capital One should indemnify United American for that liability.  Capital One's claim against Ms. Walters, therefore, is contingent upon Capital One's liability to United American on the third party demand.  It is this contingent claim that Capital One alleges is nondischargeable.

Capital One entered into evidence several checks to the Chisesis that were deposited in L.A. Walters & Associates' Capital One bank account.[16]  Mr. and Mrs. Chisesi both testified at trial that checks payable to Mr. and Mrs. Chisesi bore

---

[15]  Trial Transcript pp.72-73, 113.
[16]  Exhibits 2, 19.

their signatures but that they did not actually sign them.  Ms. Chisesi stated "[i]t looks like my signature, but I did not sign this check."[17]  Mr. Chisesi similarly stated with respect to the checks bearing his signature "[i]t looks like it, but that's not my signature because I never signed the back of that check."[18]  This testimony implied that either Ms. Walters or Mr. Coury forged the signatures.  Nevertheless, the Chisesis admitted that they gave Mr. Coury authority to obtain these funds on their behalf.[19]

An official from Capital One, Melynn Heinemann, testified as to the bank's practices with respect to forged checks. Ms. Heinemann stated that Capital One would not have accepted or given value for the checks if they had not been endorsed.[20]  Ms. Heinemann further testified that if Capital One had known that the checks it had accepted bore an unauthorized endorsement, it would not have accepted the check for deposit.[21]

## II.    Law and Analysis

### A. The Chisesis' Claims

The Chisesis allege in their complaint that the amount owed to them by Ms. Walters is non-dischargeable for three reasons: the funds were obtained by

---

[17]  Trial Transcript p. 24.
[18]  Trial Transcript p. 47.
[19]  Trial Transcript p. 50.
[20]  Trial Transcript p. 57.
[21]  Trial Transcript p. 57.

fraudulent representations or pretenses under § 523(a)(2)(A), the funds were

obtained by use of a materially false financial statement in writing under §

523(a)(2)(B), and finally, that Ms. Walters' actions constituted malicious or willful

injury to the Chisesis' property under § 523(a)(6). The Chisesis, as the creditors

objecting to the dischargeability of a debt under any of the § 523(a)

dischargeability exceptions, have the burden of proving their case by a

preponderance of the evidence.[22]

### 1.  False Representations under 523(a)(1)(A)

Section 523(a)(2)(A) excepts from discharge debts "for money, property,

services, or an extension, renewal, or refinancing of credit, to the extent obtained

by false pretenses, a false representation, or actual fraud."[23]  It is undisputed that

Ms. Walters and L.A. Walters & Associates received "money," specifically

proceeds from checks, from the Chisesis.  In order to show false representations

under § 523(a)(2)(A), the creditor must show that the misrepresentations were: (1)

knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that

were relied upon by the other party.[24]  The Court finds that Ms. Walters did not

make false representations directly to the Chisesis.  The Chisesis' claims against

Ms. Walters are nonetheless excepted from discharge under § 523(a)(2)(A),

---

[22] *Grogan v. Garner*, 498 U.S. 279, 291 (1991)

[23] 11 U.S.C. § 523(a)(2)(A).

[24] *Allison v. Roberts* (In re Allison), 960 F.2d 481, 485-86 (5th Cir.1992).

because  Mr. Coury made false representations to the Chisesis, and Mr. Coury's actions can be imputed to Ms. Walters under principles of agency.

The Chisesis failed to show that Ms. Walters personally made false representations with respect to these money transfers. In *Allison v. Roberts*, the Fifth Circuit held that when a husband made false representations, the wife's debt was not excepted from discharge unless the creditor showed that the wife was personally involved in the false representations.[25]  The court found there was "no evidence in the record link[ing] [the wife] to false or fraudulent acts or plans."[26]  In particular, the wife did not meet with the creditor and was not present at the mortgage closing where the false representations at issue were made.[27]

Similarly, in this case it was not shown that Ms. Walters actually made any false representation to the Chisesis, as in *Allison v. Roberts*.  In this case the Chisesis showed that Ms. Walters had a close relationship with the person who made false representations and benefited from the money obtained, but this is not sufficient to show that Ms. Walters personally made false representations. Testimony of the Chisesis indicated that Mr. Coury had induced them to give money to L.A. Walters & Associates, but the Chisesis themselves admitted that in their conversations with Ms. Walters she referred them to Mr. Coury on business

---

[25]  *Id.*
[26]  *Id.* at 486.
[27]  *Id.* at 485.

8

matters.[28]  This was consistent with Ms. Walters' testimony, in which she stated that she took no part in these transactions and was unaware at the time of any deception.[29]

The Fifth Circuit has held that to establish an exception to discharge under § 523(a)(2)(A), the false representation need not be made by the debtor herself. It is sufficient to show that the misrepresentations can be imputed to the debtor under applicable law.[30]

Consequently, the Chisesis also establish an exception to discharge by showing first, that Mr. Coury made false representations with respect to these transactions, and second, that those false representations can be attributed to Ms. Walters under applicable law.

As to the first of these requirements, the Chisesis established that Mr. Coury made false representations.  Mr. Coury, acting on behalf of L.A. Walters & Associates, made misrepresentations to the Chisesis that were "knowing and fraudulent falsehoods."  Mr. Coury led the Chisesis to believe that their moneys would be placed in annuities or other insurance products, when in fact the moneys

---

[28]  Trial Transcript p. 9.
[29]  Trial Transcript pp.72-73, 113.
[30]  *Tummel & Carroll v. Quinlivan*, 434 F.3d 314, 319 (5th Cir. 2005); *In re M.M. Winkler & Assocs.*, 239 F.3d 746, 748-49 (5th Cir. 2001); *Fluehr v. Paolino* (In re Paolino), 75 B.R. 641, 649 (Bankr. E.D. Pa. 1987) (holding that if husband acted as wife's agent within the scope of the agency relationship, then the agent's fraud could be imputed to the principal under § 523(a)(2)).

either remained in the L.A. Walters & Associates bank account or were

commingled in Ms. Walters' personal bank account.  Both Mary Ann and Phillip

Chisesi recounted several instances in which Mr. Coury induced them to give

money to L.A. Walters & Associates.  On May 31, 2005, the Chisesis tendered

three checks to Mr. Coury totaling $336,000.43, and Mr. Coury in turn issued a

receipt stating "Rolling to United American/Allianz $336,000.43."[31]  On August 2,

2005, Mr. Coury told the Chisesis to reissue a check for $650,000 to L.A. Walters

& Associates' bank account claiming that Allianz had erroneously cancelled the

Chisesis' existing policy and that the policy needed to be reissued.[32]  If there were

any doubt as to whether these statements were knowingly false, it was dispelled by

the fabricated account statements the Chisesis received from Mr. Coury.[33]  In those

statements, Mr. Coury entered false account balances and substituted Ms. Walters'

home phone number for that of the insurance companies' customer service lines.[34]

This was presumably done to avoid the Chisesis discovering that their moneys

were being misused.  These representations were knowingly false and fraudulent.

The second element of a false representation is that the misrepresentations

be of past or current acts; a promise to perform acts in the future is not considered

a qualifying misrepresentation merely because the promise subsequently is

---

[31]  Trial Transcript p. 17.
[32]  Trial Transcript p. 12.
[33]  Trial Transcript p. 14-15.
[34]  Trial Transcript p. 28.

breached.[35]  Mr. Coury misrepresented his current intention to use the proceeds of

the Chisesis' checks to purchase insurance products on their behalf.  Thereafter, he

misrepresented the status of those insurance products in fraudulent account

statements.  Consequently, Mr. Coury misrepresented past and current facts to the

Chisesis.

The final element for a false representation under § 523(a)(2)(A) is that the

creditor relied upon the representation.  Section 523(a)(2)(A) requires that the

creditor justifiably relied upon the debtor's misrepresentations, which is gauged by

an individual standard of the creditor's own capacity and knowledge, or the

knowledge that may fairly be charged against him from facts he can observe.[36]

The Chisesis testified that they relied upon the representations made by Mr. Coury,

and their reliance was justifiable under the circumstances.  The Chisesis thought

that the funds that they transferred were used to purchase annuities with Allianz

and United American Insurance.  When the Chisesis were presented with the

fraudulent account statements, they believed that their funds were actually invested

in the policy for the amounts listed on the statements.[37] There were no warning

signals to the Chisesis that these statements were fraudulent.  They continued to

---

[35]  *In re Bercier*, 934 F.2d 689 (5th Cir.1991) (citing 3 COLLIER ON BANKRUPTCY §
523[4] (15th ed. Rev. 2006)); *In re Roeder*, 61 B.R. 179 (Bankr.W.D.Ky.1986).
[36]  *In re Merrick*, 347 B.R. 182, 187 (Bankr. M.D. La. 2006) (citing *In re Vann*, 67
F.3d 277, 283 (11th Cir.1995)).
[37]  Trial Transcript p. 9.

11

invest because they thought that their investments were continuing to grow. Their

reliance, therefore, was reasonable under the circumstances.

Because the Chisesis established that Mr. Coury made false representations,

the remaining issue is whether the false representations by Mr. Coury can be

imputed to Ms. Walters under principles of agency.

Agency issues are matters of state law, not federal law.[38]  Because all of the

transactions at issue in this case were carried out in Louisiana, and all of the

alleged misrepresentations occurred in Louisiana, Louisiana law applies.

The Louisiana Civil Code uses the word "mandate" to describe the

relationship commonly referred to as agent and principal.  The Louisiana Civil

Code states: "The authority of the representative may be conferred by law, by

contract, such as mandate or partnership, or by the unilateral juridical act of

procuration."[39]  A mandate is defined as "a contract by which a person, the

principal, confers authority on another person, the mandatary, to transact one or

more affairs for the principal."[40]  Such an agency relationship is not presumed; the

---

[38]  *Tummel & Carroll v. Quinlivan* (In re Quinlivan), 347 B.R. 811, 816 (Bankr.
E.D. La. 2006) (citing *Easter Seal Soc'y For Crippled Children & Adults of La.,
Inc. v. Playboy Enter.*, 815 F.2d 323, 335 (5th Cir.1987).)
[39]  LA. CIV. CODE art. 2986.
[40]  LA. CIV. CODE art. 2989.

burden of proving an agency relationship is on the party seeking to bind the principal.[41]

Louisiana courts have held that an agent's authority is composed of the agent's "actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct."[42]  Express authority is created when the principal explicitly confers such authority on the agent, whether by written or oral agreement.[43]  Implied authority is established by the words and interactions of the parties, together with the circumstances of the case.[44] Essentially, implied authority is given when the principal has the right to control the agent's conduct and the agent has the right and authority to represent or bind the principal.[45]  It may be created even when the parties did not intend to do so.[46]

Apparent authority, as distinguished from implied authority, derives from the point of view of an innocent third party, who would reasonably conclude that

---

[41]  *Barrilleaux v. Franklin Foundation Hospital*, 96-0343, p. 7 (La.App. 1 Cir. 11/8/96) 683 So.2d 348, 354.

[42]  *Cartinez v. Reliable Amusement Co., Inc.*, 99-333, p. 7 (La.App. 3 Cir. 11/3/99) 746 So.2d 246, 250 (citing *Boulos v. Morrison*, 503 So.2d 1, 3 (La.1987)).

[43]  *Houston Exploration Co. v. Halliburton Energy Services, Inc.*, 359 F.3d 777, 780 (5th Cir. 2004)  (citing *AAA Tire & Exp., Inc. v. Big Chief Truck Lines, Inc.*, 385 So.2d 426, 429 (La.App. 1st Cir.1980)).

[44]  *Anderson Window & Patio Co., Inc. v. Dumas*, 560 So.2d 971, 975 (La.App. 4th Cir.1990) (citing *Sales Purchase Corp. v. Puckett*, 417 So.2d 137 (La.App. 2nd Cir.1982)), *writ denied*, 421 So.2d 250 (La.1982).

[45]  *Id.* at 975 (citing *Craft v. Trahan*, 351 So.2d 277 (La.App. 4th Cir.1977), *writ refused*, 353 So.2d 1336 (La.1978)).

[46]  *Id.*

13

the agent is acting on behalf of the principal.  Accordingly, courts have held that

apparent authority exists when "the principal has acted in such a manner so as to

give an innocent third party the reasonable belief that the agent has the authority to

act for the principal."[47]  Like implied authority, apparent authority is proved by the

implications of the actions of the principal and agent.  Nevertheless, apparent

authority must be distinguished from implied authority in that apparent authority is

"implied" from the principal's conduct that reasonably indicates to a third party

that the agent has authority to act on the principal's behalf.[48]

In the present case, when Mr. Coury dealt with the Chisesis he was acting as

an agent of Ms. Walters based on actual authority and apparent authority.  First,

documents set forth at trial showed that Ms. Walters was the principal behind L.A.

Walters & Associates.  Ms. Walters was the general agent authorized to sell United

American Insurance products.  Ms. Walters signed general agent documents that

referred to L.A. Walters & Associates as "my agency."[49]  The sole proprietorship

was registered under her tax identification number, and the bank account for L.A.

Walters & Associates was opened in her name.  As the principal of  L.A. Walters

& Associates, Ms. Walters expressly permitted Mr. Coury to act on her behalf

---

[47] *Dumas*, 560 So.2d at 975 (citing *Davidson v. Board of Trustees, State Employees Group Benefits Program*, 481 So.2d 708 (La.App. 1st Cir.1985); *Jackson v. Wal Mart Properties, Inc.*, 452 So.2d 409 (La.App. 3d Cir.1984)).
[48] *Id.*
[49] Exhibit 8.

when she named Mr. Coury as her subagent with respect to sales of United American insurance products.  Ms. Walters provided Mr. Coury access to the L.A. Walters & Associates bank account and gave Mr. Coury her signature stamp to endorse checks relating to that account.  These actions both expressly and impliedly establish that Mr. Coury had actual authority to act on Ms. Walters' behalf.

The issue of apparent authority requires the court to examine whether the principal's actions, viewed from the point of view of a third party, would give rise to an agency relationship.[50]  From the Chisesi's perspective, it was reasonable to conclude that Ms. Walters had authorized Mr. Coury to act on her behalf. Throughout the Chisesis' dealings with Ms. Walters and Mr. Coury, the Chisesis believed that they were dealing with L.A. Walters & Associates, a sole proprietorship bearing Ms. Walters name and registered by her.[51]  When the Chisesis contacted Ms. Walters directly to discuss the status of the insurance policies, Ms. Walters would refer them to Mr. Coury.[52]  Mr. Coury had apparent authority to act for Ms. Walters because Ms. Walters' actions gave the Chisesis the impression that Mr. Coury was acting on her behalf.

---

[50]  *Dumas*, 560 So.2d at 975; *Fidelity Credit Co. v. Bradford*, 177 So.2d 635 (La. App. 1 Cir. 1965) (finding principal liable for the fraud of an agent when the principal allowed the agent to carry out transactions in the name of the principal).
[51]  Trial Transcript p. 20, 81.
[52]  Trial Transcript p. 9.

Because the evidence establishes that Mr. Coury made false representations

to the Chisesis, and because Mr. Coury was acting as Ms. Walters' agent when he

made those false representations, the false representations can be imputed to Ms.

Walters under applicable law.  Thus, all of Ms. Walters' debts for those funds

obtained by L.A. Walters & Associates from the Chisesis are nondischargeable

under § 523(a)(2)(A).[53]

## 2.  Materially False Financial Statement

The Chisesis allege that the funds that they gave to L.A. Walters &

Associates were obtained by the use of a false financial statement in writing,

making the debt nondischargeable under § 523(a)(2)(B).   In order to establish

nondischargeability under § 523(a)(2)(B), the creditor must show that the debt was

obtained by the use of a statement 1) in writing, 2) that is materially false, 3)

respecting the debtor's or an insider's financial condition, 4) on which the creditor

to whom the debtor is liable for money, property, services or credit reasonably

relied, and 5) that the debtor caused to be made or published with intent to

deceive.[54]  Because the Chisesis did not set forth any statement respecting Ms.

---

[53] *Cohen v. de la Cruz*, 523 U.S. 213, 218-19 (1998) ("[o]nce it is established that
specific money or property has been obtained by fraud ... 'any debt' arising
therefrom is excepted from discharge."); *see also* Lawrence Ponoroff, *Vicarious
Thrills: The Case for Application of Agency Rules in Bankruptcy Dischargeability
Litigation*, 70 TUL. L. REV. 2515, 2542 (1996) (reasoning § 523(a)(2) makes
nondischargeable all debts that result from fraud and false representations).
[54] *Merrick*, 347 B.R. at 188-89 (citing 11 U.S.C. 523(a)(2)(B))

Walters' or an insider's financial condition, their nondischargeability claim fails to

establish the third element of a materially false financial statement

Mr. Coury gave the Chisesis account statements that were fabricated; he also

gave them a receipt indicating that the Chisesis' funds would be rolled over into an

annuity, when in fact they were not.[55]  These statements both meet the first two

elements of § 523(a)(2)(B), because they were in writing and materially false.  But

both documents fail to meet the third element, which requires that the writing be in

respect to "the debtor's or an insider's financial condition."[56]  The bankruptcy code

does not define the phrase "respecting the debtor's ... financial condition."

However, courts have limited the scope of that phrase to statements respecting the

debtor's overall net worth or financial condition. [57]  The documents that the

Chisesis rely upon are not indicative of Ms. Walter's overall net worth or financial

condition.  Rather, the documents purported to indicate the status of financial

products that the Chisesis had.  Consequently, the statements are not "respecting

---

[55]  Exhibits 12, 15.

[56]  11 U.S.C. § 523(a)(2)(B)

[57]  *Baker v. Sharpe* (In re Sharpe), 351 B.R. 409, 425 (Bankr. N.D. Tex. 2006)
(recognizing limitation of the scope of the statements under § 523(a)(2)(B) to
statements of the debtor's financial condition or net worth); *Cadwell v. Joelson* (In
re Joelson), 427 F.3d 700, 714 (10th Cir.2005) (limiting scope of phrase to
documents "analogous to balance sheets, income statements, statement of changes
in overall financial position, or income and debt statements that present the debtor
or insider's net worth, overall financial health, or equation of assets and
liabilities".)

the debtor's or an insider's financial condition" and cannot give rise to a claim for exception to discharge under § 523(a)(2)(B).

### 3. Malicious and Willful Injury Under § 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The injury that the Chisesis complain they sustained is not of the type typically addressed under § 523(a)(6). Claims that are typically excepted from discharge under § 523(a)(6) include claims for injuries stemming from assault, a debtor's obligation to a former employee for sexual harassment, libel, and injuries resulting from the debtor's drag racing.[58]

The Fifth Circuit has set forth a two-pronged test to determine dischargeability under 523(a)(6).[59] First, an injury is "willful" where there is either an objective substantial certainty of harm or a subjective motive to cause "harm."

Second, an injury is "malicious" if it is "an act done with the actual intent to cause injury."[60] For example, in *Imperial Trading v. Catalanotto*, the creditor alleged that the debtor misrepresented the value of a vending machine business with the intent to cause the creditor to pay more for the business. This court found that because the creditor failed to show evidence of the debtor's subjective motive

---

[58] *Imperial Trading Co. v. Catalanotto* (In re Catalanotto), 366 B.R. 566, 573 (Bankr. E.D. La. 2007) (citing AMJUR Bankruptcy § 3656).
[59] *In re Miller*, 156 F.3d 598, 603 (5th Cir.1998).
[60] *Id.*

to cause harm or actual intent to cause injury, the exception to discharge in §
523(a)(6) did not apply.

In this case, the Chisesis allege that Ms. Walters' misrepresentations and her
conversion of their moneys for her own use was willful and malicious within the
meaning of § 523(a)(6). The Chisesis presented no credible evidence to support the
allegation that Ms. Walters had subjective motive to cause harm or actual intent to
cause their injury. The court therefore finds that the misrepresentations and bank
transfers do not rise to the level of an "injury" within the meaning of § 523(a)(6).

### 4.  Amount of Debt That Is Nondischargeable

Because the Chisesis established that their claims against Ms. Walters are
based on money Ms. Walters obtained by false representations, any debt arising
from the false representation is excepted from discharge.[61] The Chisesis set forth
seven checks evidencing moneys obtained by Ms. Walters and L.A. Walters &
Associates through the false representations described above.[62]  The total amount
of the checks was $1,114,495.54.[63]  Therefore, the court finds that this amount is
nondischargeable as to the Chisesis.

---

[61] *See Cohen*, 523 U.S. at 218-19.
[62] Exhibits 2, 13, 19.
[63] *See id.*

### B. Capital One's Claims

Capital One alleges that its contingent claim against Ms. Walters is nondischargeable. Capital One's contingent claim is based on its potential liability under United American's third party demand in the State Court Action. Capital One cites three grounds for nondischargeability: the debt was obtained by fraudulent representations or pretenses under § 523(a)(2)(A), the debt was obtained by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny under § 523(a)(4), and because Ms. Walters' actions constituted malicious or willful injury to the Capital One's property under § 523(a)(6). Capital One has the burden of proving these exceptions apply by a preponderance of the evidence.[64]

### 1. False Representations Under § 523(a)

Capital One's claim for nondischargeability under § 523(a)(2)(A) is predicated on allegedly forged check endorsements, but Capital One did not meet its burden in proving Ms. Walters or her agent forged the endorsements at issue. Phillip and Mary Ann Chisesi both testified that they did not sign the checks from National Western and Allianz made payable to them.[65] That the Chisesis did not recall signing the checks, by itself, is not sufficient to prove that Ms. Walters forged the endorsement, or that Mr. Coury forged the endorsements on Ms. Walters' behalf. That Mr. and Ms. Chisesi admitted that they authorized these

---

[64] *Grogan*, 498 U.S. at 291.
[65] Trial Transcript pp.24, 47.

fund transfers also undercuts the allegation that Ms. Walters or Mr. Coury forged the signatures.  Consequently, Capital One failed to prove that Ms. Walters made any false representations to Capital One sufficient to establish an exception to discharge under § 523(a)(2)(A).

### 2.  Embezzlement under § 523(a)(4)

Section 523(a)(4) provides that debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" may not be discharged in bankruptcy.[66]  This exception is "intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's."[67]  However, the creditor need not prove a fiduciary relationship between the debtor and creditor in order for a debt for embezzlement or larceny to be non-dischargeable.[68]  Because Capital One made no allegation of a fiduciary relationship between itself and Ms. Walters, its only claim under § 523(a)(4) must be premised upon embezzlement or larceny.

Under § 523(a)(4), "[e]mbezzlement is defined as the fraudulent appropriation of property by a person to whom such property has been entrusted,

---

[66]  11 U.S.C. § 523(a)(4).

[67]  *Miller v. J.D. Abrams Inc.* (In re Miller), 156 F.3d 598, 602 (5th Cir. 1998).

[68]  4 COLLIER ON BANKRUPTCY ¶ 523.10[2], at 523-76 (16th ed. rev. 2009).

or into whose hands it has lawfully come."[69]  The objecting creditor must prove the debtor had fraudulent intent in taking the property.[70]  Capital One's claim for exception from discharge under § 523(a)(4) fails for two reasons.  First, Ms. Walters and Mr. Coury misappropriated money from the Chisesis, and not from Capital One.  Second, Capital One failed to prove that Ms. Walters had fraudulent intent in appropriating money from the Capital One bank account.  Ms. Walters testified that it was never her intent to take money from investors and use it for her own personal gain, and the evidence set forth by Capital One was not sufficient to show otherwise.[71]

### 3.  Malicious and Willful Injury Under § 523(a)(6)

Capital One alleges that Ms. Walters' misrepresentations and her conversion of the Chisesis' funds for her own use was willful and malicious within the meaning of § 523(a)(6).  Capital One's claim under § 523(a)(6) fails for the same reason that the Chisesis' claim under § 523(a)(6) fails.   Section 523(a)(6) requires the creditor to prove that the debtor had subjective motive to cause harm or actual intent to cause the creditor's injury.[72]  Capital One failed to meet its burden in showing Ms. Walters' intent in this regard.

---

[69]  *Miller*, 156 F.3d at 602 (internal quotation marks and citations omitted).
[70]  *Id*. at 602-03.
[71]  Trial Transcript p. 119.
[72]  *Miller*, 156 F.3d at 603.

### III.    Conclusion

For the foregoing reasons, the court holds that the Chisesis' claims against

Ms. Walters totaling $1,114,495.54 are nondischargeable. The Chisesis' claims are

for debts obtained by the false representations of Mr. Coury, who acted on Ms.

Walters behalf. The court further finds that Capital One's claims against Ms.

Walters are dischargeable because Ms. Walters made no false representation to

Capital One, and Ms. Walters' use of the bank account did not constitute a willful

and malicious injury.

New Orleans, Louisiana, April 13, 2010.

_J. A. Brown_
Jerry A. Brown
U.S. Bankruptcy Judge